SCANNED AT MENARD and E-mailed
9-18-17    by PS    67 pages
date       Initials   No.

*AFFIDAVIT TO JUDGE D.R.H.*

I BriNG to the court attion HonorablE JUDGE
D.R. Herendon that I bih to BE REMOVE From Menard
c.c. bo to MY DeFendants At PiCKNEYviIIE c.c Haven i
Family and FriENDs at Menard c.c. All staff MEMb
At PINCKNEYviII c.c contact ther Family At Menard to
Retaliate agaiNst ME and too treat ME wrong especia
staff Member is iIIER Hol a cuZin or brother work as
J'A L.t At Menard and He Allo Hol a Sister working
At the ADMiNistrative offiCE at Menard and PiCKNEYviII
c.c. L.t MEyEr was the IA L.t At Menard c.c uNtil
they transferred Him to PiCKNEYviIIE He Hol Major tiEs
and FriENds HERE warden Lashbrook and warden Jamit
are FriENd and Have work with EaCh other PiCKNEW.
c.c. iNtiII She ship to Menard I'A L.t Frank J'A
BowIEs and IA L.iNO Hol Contact J'A uNite down
Here at Menard and told them to put ME on ther
forget List and to buriE ME and say to QuiEt ME From
GettiNG HelP they the L.t Brockman Hol threaten
ME gave ME Six Months seg and told ME this what
hoppen when I Each with his Haff and Mental
Health cant save ME and My Brotier need to Hor send
EMail tellin Him to Let ME out of seg BeCause it aint
gonna hoppen I'M beitha DeniED Shut blanket and
BEd I'M BeitH DeniED Mental Health treatment
and EverythiNG EIs the DeFendant At PiCKNEYviII
c.c Hol contact ther Family Here at Menard
to Retaliate and Shot ME and ViolatE My Right

I was beaten by staff Molly while leaven Pichmyville
to Menard C.C. went to his family to E/ and other defendent
I also have a grivenconti written after ship I got to Menard C.C.
I wes aware of the threaten and the abuse and the attach
I'm given second all beaten defendant told man and
threaten ME I fear for my life I'm scared and hopless
and feel I believe if the court dont take this matter
for real I might not be a live to tell my story
I'm on hit to be Remove D-Jop I have no bed
I been at Menard C.C. 8-23-17 and still dont have
no bed I have no sheed or blanket I ask the
court to B Please send some one to take
picture of my liveing area and to see
that I'm being frozen to death I'm very
cold and no one is helpin me from Springfield
to Jdoc attach D letter from Springfield
I'm being denied Grivences and help again
B bilk no one tryin to help and this is a major
Retalian claim and all my rights being violated
I ask for help and som one please
come it see for the self the bed and
me sleepin without a bed and no sheed or
blank and the warden Lashbrook a is awor of
my claims yet nothing is being done
Pleas help me and Remove me from
here I been without bed sithe Aug 23 2017
and sheet and blank Aug 8-26-17 it it now 9-8-17

THE PLAINTIFF, DEON HAMPTON, DECLARE UNDER PENALTY OF PERJURY THAT, I HAVE PERSONAL KNOWLEDGE OF THE FACTS SET FORTH HEREIN, THAT I AM COMPETENT TO TESTIFY AND IF CALLED TO TESTIFY, I WILL STATE AS FOLLOWS:

1). I AM IN IMMENENT DANGER OF BEING BEATEN TO DEATH BY THE MENARD CORRECTIONAL CENTERS SEGREGATION UNITS STAFF, ON ALL SHIFTS AND AM IN CONSTANT FEAR FOR MY LIFE;

2). ALL OF THE ALLEGATIONS IN THE STATEMENT OF CLAIMS SECTION ARE TRUE;

3). THE MENARD CORRECTIONAL CENTERS SEGREGATION UNIT OFFICERS ON ALL SHIFTS HAVE BEATEN ME WITHOUT PROVOCATION ON SEVERAL OCCASSIONS AND THEY ~~FONDLE MY BREAST~~ AND GRAB MY REAR-END AND TELL ME THEY ARE GOING TO FORCE ME TO SUCK THEIR DICKS.

4). FINALLY, I AM BEGGING THIS COURT TO INTERVENE ON MY BEHALF. I ASK THAT IF THE COURT CANNOT TRANSFER ME TO PROTECTIVE CUSTODY, IN PONTIAC CORRECTIONAL CENTER THAT YOUR HONOR, WILL DIRECT STAFF TO STOP BEATING ME AND ALLOW ME TO HAVE FOOD, HYGIENE ITEMS, PUT ME IN A CELL WHERE THE WATER WORKS WHEN I TURN IT ON, (NOT JUST WHEN THEY WANT TO FLOOD THIS CONDEMNED CELL, # 205, THAT HAS FECES SMEARED ALL OVER THE WALLS), AND PROVIDE ME WITH BEDDING MATERIAL AND A MATTRESS.

RESPECTFULLY SUBMITTED
by Deon Hampton M15934
DEON HAMPTON, M-15934
PLAINTIFF, PRO SE

On 9-5-17 8:00AM Mental Health and another Mental Health lady was doin Chalk and when they got to my cell I showed I had no bed no sheet no blanket no tishtor and I been sleepin and a cold steel cell for 2 week and I have not had a bed for will 1-23-17 I'm billin that the courts send down one to see this for they own eyes and to the picture

Dion Hampton
M15974

WRiteN StateMent

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 7-22-13-17 | Offender: (Please Print) Hampton Dion | ID#: m15974 |
|---|---|---|
| Present Facility: PNKY C.C. | Facility where grievance issue occurred: PNKY C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): deliberate End difference

- [ ] Disciplinary Report: ___/___/___  Date of Report _____ Facility where issued _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Since June 24 I Have not been given showed or eaten the coal spiller Jeltow Slce Dinch 594 Ahomon Belford and many other coal have not feed me or showe to me I Have lost over 45ponne since May 24 2017 to now July 14 2017 I Have Maid Report to area I.A. mental Health everyone I Have Been getting threat from 3-11 and 7-3 that they wrote me B9w ticket and ask me I'A the warden lieu ahe Hal now noth lieu to fix this Issue I Have bieed been getting threat from 19ther spiller 394ahomed Duded another coal stadill to me the only way me and tester mso72l Leaving this Joint il and asory 503 they Make the

Relief Requested: that me able to feed me this Point for no satify one I outlier Intividigotion be body and I oll I am Able to eat I Eull Checed again all drested ors b.keshland

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Deon Hampton _____ m15974 _____ 7/14/17
Offender's Signature _____ ID# _____ Date

(Continue on reverse side if necessary)

| **Counselor's Response** (if applicable) | |
|---|---|
| Date Received: ___/___/___ | [ ] Send directly to Grievance Officer [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: 8 / 3 / 17 | Is this determined to be of an emergency nature? [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
| _____ Chief Administrative Officer's Signature | 8 / 3 / 17 Date |

Write Bagel to Check and IA approve of their action
against me and tellter MC771 the a Heor:ing boar at PNKY
c.c. all olds Grier w a/si off file of Sig and c green
while they NC these tickut in Poke in Bagel a no ID Kvani
Have told me that He will Do what Ever He can to make suh
we are punish and we are given a long time and Sig He allo stated
to me that I'll never see ScribHu Field and No Sadl il gonna
Do With:nlu also i me and tellter MC7ll Bein Ck Sexually abuse
sexuslly wllt Beatul with a Knike Pud under Kohn imP:idonment
and Beihle claric anc not given a shown mental Health and doctors
will where at these Issu. that a Their Iffue Hol Cause me
to take Mental Medication I'm treated framatik From Being
Sexually usll Bind un a us thuten CROADod by IA C.c. major
191 c.c. Evidone at PNKY C.c. me and tellter il Not
Safe and our Like it and Danger we Have Hold Many Report
about this Issue Every time I Heor Had I I Be com Scard
thinking I'm used to Be Killed or Beaten I Kear of My
Sokett and telfer MC771 Sakett We How both Been Bashed
and Sexually harisll and no Abuse alldes this is a Major Issue
and Somethin need to Be Done about their Issue + Have many
withness and Preff to all My complaint and Report this Place
Hol Violeten all My Right and telfer Right we are being
sett wr Uus about lich By IA C.c. Everybody we are
i wrIut and I ask that somethin be Done Alap that H.
You and End the Hoock Heor wln at PNKY C.c. are aPort ok all
this they Have Ruth told to Scare us and give w lot ok legand
c-grode and the C.C. Huck il thi how me sav:nlu H.. il not gonna
talk to My withness or write down My Hoth Statement and
He will Do what Ever He want and write down What Ever
He wan. Also the IA. S9b Lil Major Hair Stated to me
that they is gonna ship us to a nows Iouth D Joinb rown
Can Be Rape and Kill by their Family of Retalotion Because
the Have Connect thru $2000 to Diou and all they got
to Do is Call and that our all Sch they olso Hatel
the only Way we are teller or Grievanle is there a Sady
sof

ILLINOIS DEPARTMENT OF CORRECTIONS

*N2 2·05*

## Administrative Review Board
## Return of Grievance or Correspondence

Offender: __Hampton__       __Deon__       __M15934__
      Last Name         First Name       MI    ID#

Facility: __Menard__

☐ Grievance: Facility Grievance # (if applicable) _____ Dated: __8/8/2017__    or ☐ Correspondence: Dated: _____

Received: __8/14/2017__    Regarding: __PREA: Claims assaulted by staff at Pinckneyville on 3/4/17.__
     Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☒ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
                            Office of Inmate Issues
                            1301 Concordia Court, Springfield, IL 62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

---

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Administrative Transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
                          Date

☐ No justification provided for additional consideration.

---

**Other** (specify): __Your greivance dated 8/8/17, is being forwarded to Pinckneyville where the alleged incident occurred for an investigation. At the conclusion of the investigation, I/A is to provide the offender and ARB with the outcome.__

Completed by: __Dave White__                                 __8/24/2017__
          Print Name                               Signature            Date

Distribution: Offender
            Inmate Issues
            Tickler

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 8-1-17 | Offender: (Please Print) Hampton Deon | ID#: M15924 |
|---|---|---|
| Present Facility: PKK | Facility where grievance issue occurred: PNKy | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Retaliation teh

- [ ] Disciplinary Report: ___/___/___
  Date of Report            Facility where issued

Note:  Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: on March 4 2017 while Being held on a seg unit Cell 5A (21) Me and Denoshit teater m9771 was in our Cell sleep when Lt Mefats C/o spliter Sgt Scm C/o Pestka C/o Healy Now a 394 and Mr Adam (Hc Me to Dress up and a thong a Hate ISSUE Bra) and Hot teater Drell and baker Short and a Bra that was ISSUE to ME was taken out our Cell and force to do Sexual DaNcE moves Like twerk in Like a Stripper and Reveal in our Anal and Breath while we was Doith All these C/off Lt Mefer 394 all them Laugh Calling us Dick sucker cock sucken Min eater sissy punk fag and Faggot and Also More degradin word of the Laugh when we was

Relief Requested: to Hove all ticket threw out all staff Number charaur in this and all this and I would like to Be paid for all my Damages Pain suffer in and abuse and assault and Loss of wight and Everthing. Cell P. Chipman

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Deon Hampton | M15924 | 7-1-17 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___   [ ] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response ___/___/___ |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date ___/___/___ |
|---|---|

Distribution: Master File; Offender                    Page 1                    DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

Done, Don c/like the L.t Major 391 and c/o iP.1kr and another from Force M. it to a OFFice AND began to make a outside live to L.t Lawless Nown Major I wei force to Sing happy birthday and sed henei comment Like How I want Him to Fuck M. and Nut over M. and How He want M. Roch Chin on His Dick while I cream all over it and He want Down and we wei given chips and pop to Not sed Anithing and we wei threaten allo sy L.t Meyer 1911c major Adam IPilkr c/o pelthe AND many other c/o that stated if we sed anything they gonna beat our all and make our body DisAPPear out of Fear we Report to MentelHeolth prei mi moson How we wei treated and Fear Fo our Life she said she wei gonna Make a Report and we tell SPringField abel she allo said tF she Report there Issue thy gonna beat us and Retaliate against us is out of Fear we kept Quiet Eor our safety From march 2017 to April the Lt Hakk Number Porter 391 Heally c/o pelthe Spiler 391 Scro Lt Meyer 391 shomoye began to Force us to Reveel our Body Port By Hove us show our Dis breast and we wei Bribe and Effortid to Do sexoal thing Like touch our selF while they watch and show our Bnai Hole and My breost then the Butom very ForceFul by tellus that they wanna pay us to Hove sex with them and to pay and watch M. and teller Sick and Jog Each oFF and Hove sex we said No to they hurt on both to tille we Become scored oF our sofety For months there things Hove been happen to M. and teller on May 24 2017 while he and on G.P. unit i 5-D-2.6 with teller Hill MY cullie Cours we both are trons women and are Lobel oF trons Gender women Bi Low and mentel Health Doctor Sc on May 24 2017 At 5:00PM the 5-D.G.P Deck wos point to chow My cullie hoe to use the bath Room and I wei cooking us hot Food thy pop out Noon 4 chow we teller and and our wing oFF.cer c.o Kays and L.t James Come to our Look and shook the Door and wei stated you two Hot Be good and there and woth oFF a min Later MY cullie wei useing the bath Room and I wei to the Ocale Coll a porter For tille cons we wei Low out oF Nowhere c.o Kenniy Come to our celle Ke with us Hotin How Many Keople and Here What Yo'll Doing Fuckin or something we Hote D that we are tron women and he woud Like it He Respect us my cullie Roll Ns us BeKor I coll prei on Him He Hote D sorri and woth oFF. 2 min Later 391 shomoye come to our Door Door Hoting Run I wish I could cach cach Y-'ll Fuckin But teller beFuckin the shit out you How Much I Hove to Pay to see Yo'll Euck Each other then He began to Hote He can Pictue M. Jockin His Dick on His Bed while He FiH He Pictue M. and My cellie and Him Do H'ng a threesome on M. then He began to Grobe His Dick and motion How He wonna Fuck us while

Done. Dancclly the L.t Major 591 and c.o Spilly and unbother them
Furcc me it to an Office and Began to make a outside like
to L.t Lawless now. Major I wal Furce to sing happy Birthday
and Jol sexcal comments Like How I wont Him to Fcck me and
Nut over me and How He wont me Rocchin on His D.ick while
I Cream all over it and the wint down and we wal given chips and
Pop to not say Anithing and we wal threaten allo By L.t Meyer Millers
Major Adam Spiller c.o Petkha And many other c.a that Stoted if
we say anything they gonna Beat our all and Make our body
Disappear out of fear we report to Mental Health prea m Molon
How we wal treated and fear For our life she said she wal gonna
Make a report and write Spillery Etl but she allo said if she Report
these Illue thy gonna Beat us and Reataliote against us so out of
Fear we kept quiet For our safety From much 2017 to April the.
by staff number porter 591 Heally c.o petka Spiller 591 sarc L.t
Meyer 591 Ahomoya Began to Force us to Reveal our Body parts
By Have us show our Ass Breast and we wal bribe and Effortu
to do sexcal thith Like touch our Sulf while they watch and show
our Anal Hole and my Breast then they Became very Forceful by tellus
that they wanna Pay us to Have sex with them and to Pay and watch
me and teller Suck and Jog Each off and Have sex we said No do they
kept on Push to the we Became Scared of our safety For Months
these thith Have Been happen to me and teller on May 24 2017
while he and a G.P.units 5-D-26 with teller Hell my Cellife
Cauk we both are trans women and are Label of trans Gender
women By Low and Mental Health and Doctor So on May 24 2017 At
5:00PM the 5-D-tup Deck wal pointer to show my Cell how to use
the bathroom and I wal cooking us take Food that put our Door 4
show he tolet and and our wiffe Officer C.o Kays and L.t James
James Come to our Look and shook the Door and say Ifoted you two
Ilod Re-good another and walk off a min Later my Cellif wal usinlp
the both Room and I want to the poafto call a poster For teller Cauk
we wal law out of No were C.o Kennedt Cake to our Cell ing
with us stotin How Many people. and Here What Yall Doing Fuckin
or Something we Stoted that we are trans women and we w
Like if He Respect us and Stop harRoll. He us Before I complcm
on Him He Stated Sorry and walk off 2 min Later 591 Ahomoya

threat them with Prea they gonna give us a Boyd ticket and lock us
up show later at 9:30 count All the c.o 191. Lit. Major Noni
and these Grivences on M/ Jones that watch these thing Happen
we wor taken out our cell and place and Handcuffe behind our
back the took us out to the core and began to beat me Major Adam
kick me one my chest and Ron my Head to the wall then I wos force
to the ground slam on my Face by all the staff and Lt major
191 they began to spit on me kick me punch me stomp
me and knee me and my Face my face Jones wotch and
laugh while all them staff beat me it wos Lt Major Lt Jones
Major Adam 191 Leo 191 homeja c.o Porter Hacker c.o
kennedy c.o Holds Hold c.o Porter co william all these
people me and drog me by my Hair and across the Floor I
wos drog from 5-D core a door to 5-A with shower Hill being beaten
Beaten I wos screaming plece Dont kill me plece Dont kill me
Im not resisting or resisting why they beating me like this
191 Sir 191 homeja Lt Major Major Adam Hold these what happen
you threat to call Prea all the inmates began to scream Yell
bon on the door Do to me and tell these being beaten once the
inmates wos screaming and bon they drog me by my Hair Hair
while cuff both to the core pick me up and drog me over to
a quiet Room were it wos quiet and no Move with mys they
began to beat me and till Major covely told them enough I'd
Bennet come and the Room and stated what wrch Prea and I tell
I stated that me and teller are trans(woman and we were sexcually
all sexcually obuse and Beaten I'd Bennet stated a int no
woman Here but men I told him by law I'm considered a
tran(woman He become very mad and that call me men with Brealt
and Dick I'm not a woman if I wos we be at a woman Joint me and
teller I refuse to talk to him to the god sollin harressment and
verbal abuse, I wos drog back to 5-A lug while were I wos Plou
on a Box cell with No bed shert or to Jump once I vot there Place
another that began to beat me and stripp me met Hagit Heally
and begun to cut off my clothes and brother took a knife 2ND
began to cut away at my Hair Prea thermal shirt and sweter
stade Pont and underwear all they wor be beaten and cutting off
my clothes I wos screaming Plece Dont kill me Plece I'm Not
resisting not resisting while they cutting off my clothes they

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 8-8-17 | Offender: (Please Print) Dion Hampton | ID#: M11934 |
| Present Facility: PNKY | Facility where grievance issue occurred: PNKY | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☑ Other (specify): Retaliation

☐ Disciplinary Report: ____/____/____
Date of Report          Facility where issued

AUG 14 2017
ADMINISTRATIVE [...]

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** C-o Porter Merchel Kennedy William Kais Heally Hote them and South I got sick of the horrollic ment and sexual favor they had ul doing and putting fear and our L-E and mind se we we was force to do what ever they ask of show our bones for them or talk sexical to them so I hated to put all the stuff that major and 9d that if they keep on makeni and feccing us to do thiru against our will we gonna say ecta C-o williams 9d Ahomota L-t James C-o Porter C-o merkey C-o kinnedy C-o kais C-o Heally major Adam C-o Pestka 9dcco L-t Majer they all become very violent toward us soir since they we wanna

**Relief Requested:** to Be Place in Pontiac P.C. ul this too safter joint all north ... and to Pull back those and far Kir all my THJCA wandover ... and Retalira that we none and other thru out mond etter

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Hampton Dion | M11934 | 7-18-17 |
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

**Counselor's Response** (If applicable)

Date Received: ____/____/____   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response ___/___/___ |

threat them with Pen they gonna give us a Body ticket and lock us
up shock later at 9:30 count All the C.O 19th Lt. Major Noni
and these Grievances on MY Jones that woth their think Hoppin
we was taken out our cell and Place and Handcuff behind our
back the took us out to the Cell and Begin to Beat Me Major Adam
kick me and my chest and Ran my Head to the wall then I was force
to the grounds slam on my Face by all the Staff and Lt Major
19th they Began to spit on me kick me Punch me stomp
me and knee knee me and my Face MY Escort Jones wotch and
Laugh while all them Staff beat me it was Lt River Lt Jones
Major Adam 19th @ Cro 19th Ahomeya C.o Porter Mecker C.o
kinney C.o Hoss Hoott C.o Porter C.o william all these
People me and wragh me by MY Hair and across the Floor I
was Drag from 5-D Cell a door to 5-D with shower 14:11 being beaten
Beaten I was screaming Pleas Dont kill me Pleas Dont killing me
I'm not Resisting or Resisting why they Doing this
19th Lt 19th Homeya Lt River Major Adam slam these what hoppin
You threat to call Pen all the Inmates Began to scream yell
bang on the door Do to me and telter Reille beaten once the
Inmates was screaming and bang they Drag me by my Hair
while cuff both to the Cell Cell Pick me up and Drag me over to
A Quiet Room were it was quiet and No more withness they
Began to Beat me and till Major Given told them Enough I'A
Bennet came and the Room and stated what YoA Pen and B I'll
I stated that me and telter are tran women and we were sexually
all sexually abuse and Beaten I'A Bennet stated no ain't No
women Here But men I tell Him by law I'm considered a
tran women he become very mad and Hat call me men with Bruil
and Dick I'm Not a woman if I was we be at a women Joint me and
telter I Refuse to talk to Him for the god so him harrssment and
Verbal abuse I was Drag back to C.A Let while while I was Place
onU a Box cell with no bed sheet or to jump once I was there Place
another Hat Began to Beat me and Staff number Hoott Hoott
and sitan to cut off My cloth and Brother took a knife and
Began to cut away at My Hair Bra thermal Shirt und Sweter
slate pant and under wear all they was Beaten and cutting in off
MY cloth I was screaming Pleas Dont kill me Pleas I'm Not

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 8-8-17 | Offender: (Please Print) Hampton Deon | ID#: M15934 |
|---|---|---|

| Present Facility: PNKY | Facility where grievance issue occurred: PNKY |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☐ Other (specify):

☒ Disciplinary Report: 7 / 8 / 17        PNKY
Date of Report            Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Not heal I Have a Liver Bruiss on My Chest bo to Me Brush
kick (Jump abot Nove thing I Have Icord all over My body MAYSE
I Repert the Issec to t'A Lt Frank and Peca we told Him Every
thing that happen and the withnes and Evidence about Phone line
Recording that happen on March 4 2017 9:00 PM to 10:20 PM I Have
I have Proof of all My Injuries which they refuss to take pictures
of it by My won't writte when I Ask Why aint they gonna take
picter of My other Injuries Lt Frank ok I'D Itatto me ako a
Familt and I Refuss to let you take My Itatto Number bonz so
we can make a Deal you drop the Report I'll give you Every thing

Relief Requested: to Be Place in P.C. Pendion or A Iorker Joint to have all ticket
threw out Pryss Charge and be owed a Lump sum of money for all the
the the abuse sexal olls and beaten and Retalion that I've Done Me and the

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Ddp Hampton Deon                    M15934            8 / 8 / 17
Offender's Signature                    ID#                Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___ / ___ / ___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

Print Counselor's Name        Counselor's Signature        Date of Response

you had and place you and tette back together or Collib when J tole
Lt Frank No He Began to threat us Joy in He work for the police dept
and He cover up any Evidence that we have and He Begin to threat
Me Hotchin I'm Not ganna Be keeb or given a Shower I'm
Be writen Bogus ticket and Dis id and us ant till Cus No help
For No one and any one that try to help Will Be Pen I bach
for Report on what they Seen or Heard DS of Moy 24 to AUG
8-2017 I Been writen alot of Bogus ticket to the fact
I Refuse to take My complaint away J A the worden Has allowed
Co Justice too to assalt me with a Food and put me on a Bogus and
when I reported to Mental Health Staff Murry I'm not on Hunger Hi rke
and S was allby Co Justice once I was done talkin to Her the
let at the time 7-8-17 peoler and I'm not No place me on a Bogus
Hunger High and wrot me a Bogus ticket the people that witness
their thirle happen on 7-8-17 was Darrell Booker M47921
Yvonne Brown M45084 Brown Elaroy N42779 Jones Elix
Bravo R51108 Koper Page M16154 willie Glem there all the
Inmate that I had known or withnes and therr and writen
Hotchen that D-appear when I gave it to the Hrring committee
Refuke Myself that Same Night at 3:00PM 7-8-17 its Lt Co with
Co Spiller thompson England was workin the Deck Bo hele Shower
I told the Co Spiller and all the Co Joind on Hunger Hike
and I want my Food and a Shower Co Spiller began to threat me
collin Me geechy Fagget and all 4th bitch and they ganna kill us
if we go thru with the complaints and He Began to make threat
about How they ganna kill Me and tuter Bekor 7-8-17 I have Made a Phone
Report and I'm Report J A and the worden was Allowin to Hotch to Not
keeb Me or Shower Me I was Not Fed for 2month I tell Gt points
Do the to them but keeb me or Shower or Mental Health Has Reported
Everythith they Done to Me I Have Been Place on Medi Do to the
abule and Ponic attack I Been Have since the allt J A have told Lt
Hotch to Make Sure He give Me the Max on Everythith they write
me up No matter How right I'm and the threw away a Hotchent and
writen Hotch by withnes I Have Been threaten By J A Worden all thru
the whole Jhouse to Me Have Evidence and withnes to all
My Claims I Have Reported So Now J A Have written me a Bogus lot
For Sexual Misconduct which I Did Not do I was never on a futer

you had and place you and tester both together on cell 6 when j told
Lt Frank No He began to threat us jaying He work for the police dept
and He cover up any evidence that we have and he began to threat
Mr Hotchin j'm not gonna Be Feed or given a shower & j'm
Be written Bogus ticket and Rep. io and Ng all till I Get no help
for no one and why one that I ev to help well i will Be Punish
for Rep. o here what every they seen or Heard Dj of May 'x4 to Auy
8-8-17 j been written alot of Bogus ticket to the Fold
j Refuse to take My complaint away j'a the warden Has Not allowed
Co justice foo r all Me with a Food and put Me on a Bogus and
when j reported to Mental Health staff Murry j'm Not on Hunger Strike
and j was told by Co Justice at once j was done talking to Her the
let at the time 7-8-17 because and jm not No Kla Place Me on a Foke
Hunger Strike and wrot Me a Bogus ticket the People that witness
their theire happen on 7-8-17 was Darrell Booker M47921
Lyvonne Brown M45084  Brown Elroy N42379  Jones Elvis
Bravo R51105  Roper K092 M16854  Willie Glenn them / all the
Inmates that I Had Down o withheld and I then turn and written
Hotchen that Disappear when I gave it to the Hearing Committee
Reflect Myself that jame Night at 3:00PM 7-8-17 jd Lt Walk
Co Spiller then I on England was working the week booth shower
I told the Co Spiller and all the Co joint on Hunger Strike
and I want My Food and a shower Co Spiller began to threat Me
Calling Me get chy Faggot and all 4th b. tch and they gonna kill us
if we go threw with the complaints and He Began to Make threat
about How they gonna kill Me and tester Buker 7-8-17 I have made a Rico
Report and j'a Report j'a and the Warden was Allowed to Hott to Not
Feed Me or shower Me j was Not Feed for 2month j told 6+ Pounds
Do this to them but Feeding Me or shower Me Mental Health Hos Reported
Everything they Done to Me j Have Been Place on Medi Do to the
abuse and Panic attack j been Have D sence the abuse j'a Have told Lt
Heck to Make sure He give Me the Max on Everything they write
Me up Not Matter How Right j'a and this threw away a Hot Mnt and
written Stolen by withheld j Have Been threaten by j'a Warden all threw
the whole j'a unit. & to Me Have Evidence and Witness to all
My Claims j Have Reported So Now j'a Have Written Me a Bogus lot
For Sexual Misconduct which j will Not do j was a Never and a sexu

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 8-18-17 | Offender: (Please Print) Hampton Dean | ID#: M15934 |
|---|---|---|
| Present Facility: PNKY | Facility where grievance issue occurred: PNKY | |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☒ Staff Conduct    ☐ Dietary    ☐ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify):

☒ Disciplinary Report: 7 / 11 / 17      PNKY
                        Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** Sating we laid think we ain't Jay on may 25 2017 when Interview by Lt Frank he Ask me was I tested and I laver court the 9th Phone Record showing I tell my mom I am Molested and Love each other I ask Lt Frank of Jb What Do A sexual Relationship got to no with and tester BLO Bully Sexually hostile sexually Misconduct Sexually assulted Extort on Fail Inprisonment Retaliation Viol of Illegi Basic aggravated assult Battery assult abuse of dept conduct Polile Brutily threats/th Intimidation tamper with Evidence Hate crim diserimination tamper with Mail and many more things So when I Stated tester and our Relationship have nothing to do with the complaint

**Relief Requested:** to Be Ship to P.C. or a safer Joint Bully incesty and to have all Infliched threated and seaworded a LCMP Sena call For my Injuries sexual abuse sexual ass and beaten and Retaliation me and tester

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Hampton Dean                     M15934          8 18 17
Offender's Signature              ID#              Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___ / ___ / ___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

Print Counselor's Name          Counselor's Signature          Date of Response

**OFFENDER'S GRIEVANCE** (Continued)

Because I'm Frank and I'm what I take was aware on Feb 2017 when I call and tell my tour tester + I my Bell Ke. Emp and I'ha psych H.r and we ?mn- got Movi. 20 now and the Hol a new child to have love, with Call Her for my Brother and I'm not aware when I said they thick-they write it h.l.lb I'm out and broken to Brikle their since up he and ticker one Nob Lover we are Emotional support for this that built off. Ere, this been that Nobody can Brush and we are marrid of Re. Emp Nob Lover / Is that Had Nothing to do with the complaint I admitted when he and teller was Cry, we we gave Each other a sisterly Hope me a kill or the check with his Bell I Did Report that but Nothing hurt me at me an front women today matter How we look or act that give no right for I to write Bogus lot and Have the ad.Teisment committee to gave us mad in every thickle out of retaliation and Anger they Have threaten to kill or they threaten to Cover up Evidence to No one believe me they allow the staff to kill white oflocker he and Play with Mail and I'm still being thick and torture Harrasse and written bogus ticket I'm Have put a Hit on my safety Hobirle He's gonna Make sure He put our oil and a body bag, and He got connection on the other Jo.r we are Ever me and teller so we gonna Have a Kuck Bie and and they gonna give us cell.ik that People are bent us Eve a L.L Rite of writing to I been recultirk P.L when I recall BP.L I'M Frank L.ND and Bowles Hotel we gonna be killed coun they ×1 know it and menard P.L and Menard and Ill Husband want here it's gonna do Be were I cant tell he help of sexy treshment and they Have a Hit on my life and teller by law I'M Not suppose to Be subjected to Sexual abuse or rape of a Prisoner or by staff by staff is definition of a Malicious and jod.l.lice we of force Smith v Cuchhan: 139 P.3d 1235, 1612-13 (14 th C.A. 700?) I Have Proven that My Eighth amendment is violated when prison officials malicioully and sadistically use of force to cout him Even if the Prisoner does not suffer serious injury Hudson v McMillian 503 ol 1,9 (1992). See Allo treant v Morgan 3cf R.3d 865, 877 (5th C.R 2002)( one of Peter Ikrov on prisones who had not Jeopardized any Person safety or threatened Prison security). blle cook at laser v Planel luc. J-00-2527, 2008 wl of medlia tcJoda v. Sacrament couity, uc.civ. J-04-1216 2008 vl 4 2215 +(E. Core Fo 22 2006) ally look up schwenk v Hertford, 204 F.3n 1187 ( 9th C.A 2009) or lue (Hd)(Act) w.D. J/l 1996 Prison officio have duty to Protect all inmates. Jenes v Russell, 270 k. supp.

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE (Continued)

Because I'h Frank and t'h Unit Hoff Wol aware on Feb 2017 When I
coll and tell My tole teller t/ My Best Ex. Ltps and I ha Marr'l Her
and we gonna get marr'ed now and ith Hol a new child to Luve couple with
Loll Her Son My Brother and I'h was aware when I sa'd there third-flag
unite children I'm out and Broken to Brible then since up me and teller
On not Lover we are emotional let'rod bet t'er that built a Ex. Ex liive
bond that nobody can Break and we are marr'ed Ex. Ex. his Lover /
le that Had nothing to do with the Complaint I add mitter when me and
teller wer Git, like we gave Each other a Sister'd Hugs on a kiss on the
check nothing Ell' I d'd report that But nothing taken of me on teller
women kokes matter How we look or Act that give me r'ght For I h to write
Bates I-7 and Have the ad. Teli'ment Committee to gave us Mod on every
think out of retal'ed. on one Angie that Have threat in to k'll us that
threaten to cover up Ev. Dence to No one bel'eve me they allow the Hoffe
to K'll work allregant me and Plot with Mail Exp I'h Hill Death threa'ten
and be' use Herroll one written bodal l'ckel J'A Have. put a H'd on My
Safety Motion. He'l gonna Make Jake He put up all on a body say and
He got connection on the other Jo ni He re Ever me one teller to we gonna
Have a Fuck. Bid and now they gonna give us celli'le that Rope us be but
us Fix a L.l. Rite of nothing to I Been Requir'd. P.l when I have li.
PPL I'A Frank L. Nb and Bowied Heler me gonna be killed cause they X l
Kom'tt and menard P.l. one Menard and Th Hident wint here ille gonna
go Be were I can't get No help or seen teacher act) they have a H'd on
My L'Fe and teller by Lov J'h Hed suppose to Be subjected to Sexual abu's
of Rope of a Prisoner or by Hoff by Staff is deliberate of a Mal'cious
and Sad. Ili.e use of Force Smith v Cochron :39 R.3d 1205, 1212-13
(1. th C.R. 200?) I Have Proven that my E:ghth amendent is Violated
when Prison off'c'als mal. c'ous'ly and Sad'st'cally use of Force to
couse harm Even if the Prisoner dote not suffer ser'ous Injury
Hudson V McMillian sup u.s. 1.9. (1992). See Also treats v Morgon
Bef R.3d 86t, 877 (7th C.R 2002)(use of Force threat on persons who lied
Not Jeopardized any Penon Safety or threatened Prison Security).
Also Look at Fasol V Branel Nul-04-2687, 200? Wl or Medina -
teJeda V. Sacrament County, No.C'V. 1-04-131. 2006 WL 465'5 F (
Call F 027 2006) Also look up Schwenk V Hartford, 204 F 3d 1187
(9th C.R 2009) or Lee (H4)(Act) N.D. I11. 1996 Pr.son Off'c'al
Have duty to Protect all Inmotes Jone V Russell. 9(u F Supp. 1

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 8-3-17 | Offender: (Please Print) Hampton Deon | ID#: M15934 |
|---|---|---|

| Present Facility: PNKY | Facility where grievance issue occurred: PNKY |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☒ Other (specify): _Retaliation_

☒ Disciplinary Report: ___ / ___ / ___    AUG 3 2017    PNKY
Date of Report    Facility where issued

ADMINISTRATIVE
REVIEW BOARD

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: _From all the Incedent that happen to me and to the M1521 we Have Lots of Evidence on Fract and writen statemant in the cell that will in to tell Preak up on what they turn happen to us all my withness alto Befor I write down my withness I was being not given medica attion all the Next Day because Sgt chemaya Hotce and Did over time and He told Nurse Kim Richurdson that I was Leen but I was had been befor Him if the book say I wasnt seen then the Yonna have in Medical attion which the Did she told 196 hamate why vouln He Lif when I have Leut Injuries and Cut to my body. A Report was writen by Nchl Kim the Richurdson and turn and to J.A. - there is all my withness_

Relief Requested: _that me and to the Ber shipt to P.C. or a toter Toint We be awarded Money for all the Injuries onpabil Bill and Stamped Dept that happen all ticket Be throw out and Press Charges on all Defendant_

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Hampton Deon_    M15934    8-3-17
Offender's Signature    ID#    Date

(Continue on reverse side if necessary)

---

| **Counselor's Response** (If applicable) | |
|---|---|

Date Received: ___ / ___ / ___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

Print Counselor's Name    Counselor's Signature    Date of Response

DoRell Booker M47921 / Isaiah m Stone m05175/ David Brown m9105/
tarl Lyles / MalColm tolbert R71914 / tyrone Brown m905P4/
tricia Warren Morr N87736/ Semaja Woods M47r33/ Leon Harris
John Hudson K52602 / Gary Hammons Sellor / michael smith R5-7000
Damotin Bell M35142/ Harry Heiter m39333/ Xavier Bell
Anthony white mo9749/ Derrick Mavi mo659r/ Bravo R5110r
Turel Ellis / Brown Floyd N42379/ Lopse pn2 M16859/
willie Gilliam / thomas Ganier / williams Dion / and Mental Health
Staid m.RRd m/ molon mr smith m/ Reid m/ Molly m/ hill and many more
withheld I Have wrote to Springkfield ar-B ner isk time and
still Have not get a Responb i'M Hope of who ever recive
respond back and let me No that it Reach spring K-Eld to Please
thank you

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

Dontell Booker M47921 / Isa Tah m flake m #135/ Dovi D Browm m # 10916
toril Lilly/ MaLColm telbert R71131/ Aronne Browm m#10914
darken Warren M00r m B77136/ Jamis wood M47r 27/ Deordroui
John Hudson R52602/ Geth Hammonm Sillok/michael Smith R57080
Palm Tic Bell m#51121/ bolist Shewine m#17655/ XaVie El Soh
Bishamd whitfer m#7949/ Derrick Mood m#6812-/ Braxdic Relly et
James Elliy/ Browm FlaxdB10165791 Deordrou m#6390/
willlie Calvery/ thomas gaBriely william vion/ anD Mental Health
Shad AuxMM Al molen McIMill Mr RoLo Mr MoLLY Mr bull oor Mental Heal
williull I Have writem to Shexikafield oak.b ored fixh fixe/ood
shill Move has got a Respomb sMa Hist mess who f Mr Rel bill-
Respomd gothomb let Mr he thot i I Bush MrVilkfelD & Verin
thenk yeu

Written Statement

I woodard charles M40488 have known that Dean
hampton was getting ship true to mental because
the C/os ord sgt were talking about it everyday
they were also trying to plot to harm Dean Hampton
I have little knowledge of Hampton I have witness many
action that was taking place by the officer and with
Dean Hampton how the correctional officer mistreat
Dean Hampton and threating her from flooding her cell
not feeding her and calling her out of her name as
a gay insult I witness that they have'nt given her
any property nor a bed or sheets to sleep on which
I believe that's not fair to her she also been
asking for showers they have not yet given the
things that she suppose to have while in seg which
is a violation to her consitute Adm. under the cruel
and unusual punishment, I woodard charles
M40488 has also suffec vebal attacks as well from
Lt. Brockman Due to the fact he is trying to extort
me and retaliate against me for helping Dean
Hampton and he took the written ~statement~ written for
Dean Hampton and use it against me as retalition.
I can testify to what happen with Dean Hampton.
Name: Charles woodard M40488   8-31-17

Affidavit

I, Woodard Charles M40488, bear witness that on August 26, 2017 C/O Mccalb call Inmate Dean Hampton #M15734 a fag bitch and continue to go on with his insults. C/O Mccalb was threating Dean Hampton safty by saying he was going to scar Dean Hampton food. C/O Mccalb went on to tell Dean Hampton that he wasn't gettim his property or ID. C/O Mccalb then called C/O Griffin and told him look at this fag bitch and then say to Dean Hampton "you think we going help when you trying to brick our officer, aint going to happen", then walk off laughing. The next thing I knew C/O Mccalb and Griffin flooded Dean Hampton cell. I heard Dean Hampton scram and calling for a crisis team and mental health which the c/os denied Dean Hampton. The white sgt. Jones came and watch the situation continue to go on then ask Dean Hampton did he had a Dick and then walk off. I witness Dean Hampton asked for a mental health about his safty everyday. I'd also witness c/o Mccalb play with Dean Hampton food by placing a black bug and spiting in his food. Then today on the date of 8-31-17 I witness c/o Mccalb passing out trays I heard Dean Hampton say "why ya'll aint given me my tray like

Chuck hole without given him his food c/o Mcaalb stated
that Deon Hampton aint eating following by calling
Deon Hampton a bitch and then walk off. I wooderd
Charles M40488 has also suffer vebal attacks as well
from Lt Brockman Due to the fact he is truing to extort
me am releated against me for helping Deon Hampton
and he took the written statement for Deon Hampton
and use it against me in vilolation. This is written
to the best of my understanding.

_____  8-31-17



PL 108-79, September 4, 2003, 117 Stat 972

UNITED STATES PUBLIC LAWS
108th Congress - First Session
Convening January 7, 2003

Additions and Deletions are not identified in this database.
Vetoed provisions within tabular material are not displayed

PL 108-79 (S 1435)
September 4, 2003
PRISON RAPE ELIMINATION ACT OF 2003

An Act To provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

<< 42 USCA § 15601 NOTE >>

(a) SHORT TITLE.—This Act may be cited as the "Prison Rape Elimination Act of 2003".
(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.

Sec. 2. Findings.

Sec. 3. Purposes.

Sec. 4. National prison rape statistics, data, and research.

Sec. 5. Prison rape prevention and prosecution.

Sec. 6. Grants to protect inmates and safeguard communities.

Sec. 7. National Prison Rape Reduction Commission.

Sec. 8. Adoption and effect of national standards.

Sec. 9. Requirement that accreditation organizations adopt accreditation standards.

Sec. 10. Definitions.

<< 42 USCA § 15601 >>

SEC. 2. FINDINGS.

Congress makes the following findings:
(1) 2,100,146 persons were incarcerated in the United States at the end of 2001: 1,324,465 in Federal and State prisons and 631,240 in county and local jails. In 1999, there were more than 10,000,000 separate admissions to and discharges from prisons and jails.
(2) Insufficient research has been conducted and insufficient data reported on the extent of prison rape. However, experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison. Many inmates have suffered repeated assaults. Under this estimate, nearly 200,000 inmates now incarcerated have been or will be the victims of prison rape. The total number of inmates who have been sexually assaulted in the past 20 years likely exceeds 1,000,000.
(3) Inmates with mental illness are at increased risk of sexual victimization. America's jails and prisons house more mentally ill individuals than all of the Nation's psychiatric hospitals combined. As many as 16 percent of inmates in State prisons and jails, and 7 percent of Federal inmates, suffer from mental illness.
(4) Young first-time offenders are at increased risk of sexual victimization. Juveniles are 5 times more likely to be sexually assaulted in adult rather than juvenile facilities—often within the first 48 hours of incarceration.
(5) Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults.
(6) Prison rape often goes unreported, and inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault—if they receive treatment at all.
(7) HIV and AIDS are major public health problems within America's correctional facilities. In 2000, 25,088 inmates in Federal and State prisons were known to be infected with HIV/AIDS. In 2000, HIV/AIDS accounted for more than 6 percent of all deaths in Federal and State prisons. Infection rates for other sexually transmitted diseases, tuberculosis, and hepatitis B and

C are also far greater for prisoners than for the American population as a whole. Prison rape undermines the public health by contributing to the spread of these diseases, and often giving a potential death sentence to its victims.

(8) Prison rape endangers the public safety by making brutalized inmates more likely to commit crimes when they are released—as 600,000 inmates are each year.

(9) The frequently interracial character of prison sexual assaults significantly exacerbates interracial tensions, both within prison and, upon release of perpetrators and victims from prison, in the community at large.

(10) Prison rape increases the level of homicides and other violence against inmates and staff, and the risk of insurrections and riots.

(11) Victims of prison rape suffer severe physical and psychological effects that hinder their ability to integrate into the community and maintain stable employment upon their release from prison. They are thus more likely to become homeless and/or require government assistance.

(12) Members of the public and government officials are largely unaware of the epidemic character of prison rape and the day-to-day horror experienced by victimized inmates.

(13) The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution. In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court ruled that deliberate indifference to the substantial risk of sexual assault violates prisoners' rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment. The Eighth Amendment rights of State and local prisoners are protected through the Due Process Clause of the Fourteenth Amendment. Pursuant to the power of Congress under Section Five of the Fourteenth Amendment, Congress may take action to enforce those rights in States where officials have demonstrated such indifference. States that do not take basic steps to abate prison rape by adopting standards that do not generate significant additional expenditures demonstrate such indifference. Therefore, such States are not entitled to the same level of Federal benefits as other States.

(14) The high incidence of prison rape undermines the effectiveness and efficiency of United States Government expenditures through grant programs such as those dealing with health care; mental health care; disease prevention; crime prevention, investigation, and prosecution; prison construction, maintenance, and operation; race relations; poverty; unemployment and homelessness. The effectiveness and efficiency of these federally funded grant programs are compromised by the failure of State officials to adopt policies and procedures that reduce the incidence of prison rape in that the high incidence of prison rape—

(A) increases the costs incurred by Federal, State, and local jurisdictions to administer their prison systems;

(B) increases the levels of violence, directed at inmates and at staff, within prisons;

(C) increases health care expenditures, both inside and outside of prison systems, and reduces the effectiveness of disease prevention programs by substantially increasing the incidence and spread of HIV, AIDS, tuberculosis, hepatitis B and C, and other diseases;

(D) increases mental health care expenditures, both inside and outside of prison systems, by substantially increasing the rate of post-traumatic stress disorder, depression, suicide, and the exacerbation of existing mental illnesses among current and former inmates;

(E) increases the risks of recidivism, civil strife, and violent crime by individuals who have been brutalized by prison rape; and

(F) increases the level of interracial tensions and strife within prisons and, upon release of perpetrators and victims, in the community at large.

(15) The high incidence of prison rape has a significant effect on interstate commerce because it increases substantially—

(A) the costs incurred by Federal, State, and local jurisdictions to administer their prison systems;

(B) the incidence and spread of HIV, AIDS, tuberculosis, hepatitis B and C, and other diseases, contributing to increased health expenditures throughout the Nation;

(C) the rate of post-traumatic stress disorder, depression, suicide, and the exacerbation of existing mental illnesses among current and former inmates, contributing to increased health and medical expenditures throughout the Nation; and

(D) the risk of recidivism, civil strife, and violent crime by individuals who have been brutalized by prison rape.

<< 42 USCA § 15602 >>

## SEC. 3. PURPOSES.

The purposes of this Act are to—

(1) establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States;

(2) make the prevention of prison rape a top priority in each prison system;

(3) develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape;

(4) increase the available data and information on the incidence of prison rape, consequently improving the management and administration of correctional facilities;

(5) standardize the definitions used for collecting data on the incidence of prison rape;

(6) increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape;

(7) protect the Eighth Amendment rights of Federal, State, and local prisoners;

(8) increase the efficiency and effectiveness of Federal expenditures through grant programs such as those dealing with health care; mental health care; disease prevention; crime prevention, investigation, and prosecution; prison construction, maintenance, and operation; race relations; poverty; unemployment; and homelessness; and

(9) reduce the costs that prison rape imposes on interstate commerce.

<< 42 USCA § 15603 >>

## SEC. 4. NATIONAL PRISON RAPE STATISTICS, DATA, AND RESEARCH.

(a) ANNUAL COMPREHENSIVE STATISTICAL REVIEW.—
(1) IN GENERAL.—The Bureau of Justice Statistics of the Department of Justice (in this section referred to as the "Bureau") shall carry out, for each calendar year, a comprehensive statistical review and analysis of the incidence and effects of prison rape. The statistical review and analysis shall include, but not be limited to the identification of the common characteristics of—
(A) both victims and perpetrators of prison rape; and
(B) prisons and prison systems with a high incidence of prison rape.
(2) CONSIDERATIONS.—In carrying out paragraph (1), the Bureau shall consider—
(A) how rape should be defined for the purposes of the statistical review and analysis;
(B) how the Bureau should collect information about staff-on-inmate sexual assault;
(C) how the Bureau should collect information beyond inmate self-reports of prison rape;
(D) how the Bureau should adjust the data in order to account for differences among prisons as required by subsection (c)(3);
(E) the categorization of prisons as required by subsection (c)(4); and
(F) whether a preliminary study of prison rape should be conducted to inform the methodology of the comprehensive statistical review.
(3) SOLICITATION OF VIEWS.—The Bureau of Justice Statistics shall solicit views from representatives of the following: State departments of correction; county and municipal jails; juvenile correctional facilities; former inmates; victim advocates; researchers; and other experts in the area of sexual assault.
(4) SAMPLING TECHNIQUES.—The review and analysis under paragraph (1) shall be based on a random sample, or other scientifically appropriate sample, of not less than 10 percent of all Federal, State, and county prisons, and a representative sample of municipal prisons. The selection shall include at least one prison from each State. The selection of facilities for sampling shall be made at the latest practicable date prior to conducting the surveys and shall not be disclosed to any facility or prison system official prior to the time period studied in the survey. Selection of a facility for sampling during any year shall not preclude its selection for sampling in any subsequent year.
(5) SURVEYS.—In carrying out the review and analysis under paragraph (1), the Bureau shall, in addition to such other methods as the Bureau considers appropriate, use surveys and other statistical studies of current and former inmates from a sample of Federal, State, county, and municipal prisons. The Bureau shall ensure the confidentiality of each survey participant.
(6) PARTICIPATION IN SURVEY.—Federal, State, or local officials or facility administrators that receive a request from the Bureau under subsection (a)(4) or (5) will be required to participate in the national survey and provide access to any inmates under their legal custody.
(b) REVIEW PANEL ON PRISON RAPE.—
(1) ESTABLISHMENT.—To assist the Bureau in carrying out the review and analysis under subsection (a), there is established, within the Department of Justice, the Review Panel on Prison Rape (in this section referred to as the "Panel").
(2) MEMBERSHIP.—

(A) COMPOSITION.—The Panel shall be composed of 3 members, each of whom shall be appointed by the Attorney General, in consultation with the Secretary of Health and Human Services.
(B) QUALIFICATIONS.—Members of the Panel shall be selected from among individuals with knowledge or expertise in matters to be studied by the Panel.
(3) PUBLIC HEARINGS.—
(A) IN GENERAL.—The duty of the Panel shall be to carry out, for each calendar year, public hearings concerning the operation of the three prisons with the highest incidence of prison rape and the two prisons with the lowest incidence of prison rape in each category of facilities identified under subsection (c)(4). The Panel shall hold a separate hearing regarding the three Federal or State prisons with the highest incidence of prison rape. The purpose of these hearings shall be to collect evidence to aid in the identification of common characteristics of both victims and perpetrators of prison rape, and the identification of common characteristics of prisons and prison systems with a high incidence of prison rape, and the identification of common characteristics of prisons and prison systems that appear to have been successful in deterring prison rape.
(B) TESTIMONY AT HEARINGS.—
(i) PUBLIC OFFICIALS.—In carrying out the hearings required under subparagraph (A), the Panel shall request the public testimony of Federal, State, and local officials (and organizations that represent such officials), including the warden or director of each prison, who bears responsibility for the prevention, detection, and punishment of prison rape at each entity, and the head of the prison system encompassing such prison.
(ii) VICTIMS.—The Panel may request the testimony of prison rape victims, organizations representing such victims, and other appropriate individuals and organizations.
(C) SUBPOENAS.—
(i) ISSUANCE.—The Panel may issue subpoenas for the attendance of witnesses and the production of written or other matter.
(ii) ENFORCEMENT.—In the case of contumacy or refusal to obey a subpoena, the Attorney General may in a Federal court of appropriate jurisdiction obtain an appropriate order to enforce the subpoena.
(c) REPORTS.—
(1) IN GENERAL.—Not later than June 30 of each year, the Attorney General shall submit a report on the activities of the Bureau and the Review Panel, with respect to prison rape, for the preceding calendar year to—
(A) Congress; and
(B) the Secretary of Health and Human Services.
(2) CONTENTS.—The report required under paragraph (1) shall include—
(A) with respect to the effects of prison rape, statistical, sociological, and psychological data;
(B) with respect to the incidence of prison rape—
(i) statistical data aggregated at the Federal, State, prison system, and prison levels;
(ii) a listing of those institutions in the representative sample, separated into each category identified under subsection (c)(4) and ranked according to the incidence of prison rape in each

institution; and

(iii) an identification of those institutions in the representative sample that appear to have been successful in deterring prison rape; and

(C) a listing of any prisons in the representative sample that did not cooperate with the survey conducted pursuant to section 4.

(3) DATA ADJUSTMENTS. - In preparing the information specified in paragraph (2), the Attorney General shall use established statistical methods to adjust the data as necessary to account for differences among institutions in the representative sample, which are not related to the detection, prevention, reduction and punishment of prison rape, or which are outside the control of the State, prison, or prison system, in order to provide an accurate comparison among prisons. Such differences may include the mission, security level, size, and jurisdiction under which the prison operates. For each such adjustment made, the Attorney General shall identify and explain such adjustment in the report.

(4) CATEGORIZATION OF PRISONS.—The report shall divide the prisons surveyed into three categories. One category shall be composed of all Federal and State prisons. The other two categories shall be defined by the Attorney General in order to compare similar institutions.

(d) CONTRACTS AND GRANTS.—In carrying out its duties under this section, the Attorney General may—

(1) provide grants for research through the National Institute of Justice; and

(2) contract with or provide grants to any other entity the Attorney General deems appropriate.

(e) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated $15,000,000 for each of fiscal years 2010 through 2010 to carry out this section.

<< 42 USCA § 15604 >>

SEC. 5. PRISON RAPE PREVENTION AND PROSECUTION.

(a) INFORMATION AND ASSISTANCE.—

(1) NATIONAL CLEARINGHOUSE.—There is established within the National Institute of Corrections a national clearinghouse for the provision of information and assistance to Federal, State, and local authorities responsible for the prevention, investigation, and punishment of instances of prison rape.

(2) TRAINING AND EDUCATION.—The National Institute of Corrections shall conduct periodic training and education programs for Federal, State, and local authorities responsible for the prevention, investigation, and punishment of prison rape.

(b) REPORTS.—

(1) IN GENERAL.—Not later than September 30 of each year, the National Institute of Corrections shall submit a report to Congress and the Secretary of Health and Human Services. This report shall be available to the Director of the Bureau of Justice Statistics.

(2) CONTENTS.—The report required under paragraph (1) shall summarize the activities of the Department of Justice regarding prison rape abatement for the preceding calendar year.

(c) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated $5,000,000 for each of fiscal years 2004 through 2010 to carry out this section.

<< 42 USCA § 15605 >>

SEC. 6. GRANTS TO PROTECT INMATES AND SAFEGUARD COMMUNITIES.

(a) GRANTS AUTHORIZED.—From amounts made available for grants under this section, the Attorney General shall make grants to States to assist those States in ensuring that budgetary circumstances (such as reduced State and local spending on prisons) do not compromise efforts to protect inmates (particularly from prison rape) and to safeguard the communities to which inmates return. The purpose of grants under this section shall be to provide funds for personnel, training, technical assistance, data collection, and equipment to prevent and prosecute prisoner rape.

(b) USE OF GRANT AMOUNTS.—Amounts received by a grantee under this section may be used by the grantee, directly or through subgrants, only for one or more of the following activities:

(1) PROTECTING INMATES.—Protecting inmates by—

(A) undertaking efforts to more effectively prevent prison rape;

(B) investigating incidents of prison rape; or

(C) prosecuting incidents of prison rape.

(2) SAFEGUARDING COMMUNITIES.—Safeguarding communities by—

(A) making available, to officials of State and local governments who are considering reductions to prison budgets, training and technical assistance in successful methods for moderating the growth of prison populations without compromising public safety, including successful methods used by other jurisdictions;

(B) developing and utilizing analyses of prison populations and risk assessment instruments that will improve State and local governments' understanding of risks to the community regarding release of inmates in the prison population;

(C) preparing maps demonstrating the concentration, on a community-by-community basis, of inmates who have been released, to facilitate the efficient and effective—

(i) deployment of law enforcement resources (including probation and parole resources); and

(ii) delivery of services (including job training and substance abuse treatment) to those released inmates;

(D) promoting collaborative efforts, among officials of State and local governments and leaders of appropriate communities, to understand and address the effects on a community of the presence of a disproportionate number of released inmates in that community; or

(E) developing policies and programs that reduce spending on prisons by effectively reducing rates of parole and probation revocation without compromising public safety.

(c) GRANT REQUIREMENTS.—

(1) PERIOD.—A grant under this section shall be made for a period of not more than 2 years.

scheduled by the Commission.

(4) RULES.—The Commission may establish by majority vote any other rules for the conduct of Commission business, if such rules are not inconsistent with this Act or other applicable law.

(d) COMPREHENSIVE STUDY OF THE IMPACTS OF PRISON RAPE.—

(1) IN GENERAL.—The Commission shall carry out a comprehensive legal and factual study of the penological, physical, mental, medical, social, and economic impacts of prison rape in the United States on—

(A) Federal, State, and local governments; and

(B) communities and social institutions generally, including individuals, families, and businesses within such communities and social institutions.

(2) MATTERS INCLUDED.—The study under paragraph (1) shall include

(A) a review of existing Federal, State, and local government policies and practices with respect to the prevention, detection, and punishment of prison rape;

(B) an assessment of the relationship between prison rape and prison conditions, and of existing monitoring, regulatory, and enforcement practices that are intended to address any such relationship;

(C) an assessment of pathological or social causes of prison rape;

(D) an assessment of the extent to which the incidence of prison rape contributes to the spread of sexually transmitted diseases and to the transmission of HIV;

(E) an assessment of the characteristics of inmates most likely to commit prison rape and the effectiveness of various types of treatment or programs to reduce such likelihood;

(F) an assessment of the characteristics of inmates most likely to be victims of prison rape and the effectiveness of various types of treatment or programs to reduce such likelihood;

(G) an assessment of the impacts of prison rape on individuals, families, social institutions and the economy generally, including an assessment of the extent to which the incidence of prison rape contributes to recidivism and to increased incidence of sexual assault;

(H) an examination of the feasibility and cost of conducting surveillance, undercover activities, or both, to reduce the incidence of prison rape;

(I) an assessment of the safety and security of prison facilities and the relationship of prison facility construction and design to the incidence of prison rape;

(J) an assessment of the feasibility and cost of any particular proposals for prison reform;

(K) an identification of the need for additional scientific and social science research on the prevalence of prison rape in Federal, State, and local prisons;

(L) an assessment of the general relationship between prison rape and prison violence;

(M) an assessment of the relationship between prison rape and levels of training, supervision, and discipline of prison staff; and

(N) an assessment of existing Federal and State systems for reporting incidents of prison rape, including an assessment of whether existing systems provide an adequate assurance of confidentiality, impartiality and the absence of reprisal.

(3) REPORT.—

(A) DISTRIBUTION.—Not later than 2 years after the date of the initial meeting of the Commission, the Commission shall submit a report on the study carried out under this subsection to—

(i) the President;

(ii) the Congress;

(iii) the Attorney General;

(iv) the Secretary of Health and Human Services;

(v) the Director of the Federal Bureau of Prisons;

(vi) the chief executive of each State; and

(vii) the head of the department of corrections of each State.

(B) CONTENTS.—The report under subparagraph (A) shall include—

(i) the findings and conclusions of the Commission;

(ii) recommended national standards for reducing prison rape;

(iii) recommended protocols for preserving evidence and treating victims of prison rape; and

(iv) a summary of the materials relied on by the Commission in the preparation of the report.

(e) RECOMMENDATIONS.—

(1) IN GENERAL.—In conjunction with the report submitted under subsection (d)(3), the Commission shall provide the Attorney General and the Secretary of Health and Human Services with recommended national standards for enhancing the detection, prevention, reduction, and punishment of prison rape.

(2) MATTERS INCLUDED.—The information provided under paragraph (1) shall include recommended national standards relating to—

(A) the classification and assignment of prisoners, using proven standardized instruments and protocols, in a manner that limits the occurrence of prison rape;

(B) the investigation and resolution of rape complaints by responsible prison authorities, local and State police, and Federal and State prosecution authorities;

(C) the preservation of physical and testimonial evidence for use in an investigation of the circumstances relating to the rape;

(D) acute-term trauma care for rape victims, including standards relating to—

(i) the manner and extent of physical examination and treatment to be provided to any rape victim; and

(ii) the manner and extent of any psychological examination, psychiatric care, medication, and mental health counseling to be provided to any rape victim;

(E) referrals for long-term continuity of care for rape victims;

(F) educational and medical testing measures for reducing the incidence of HIV transmission due to prison rape;

(G) post-rape prophylactic medical measures for reducing the incidence of transmission of sexual diseases;

(H) the training of correctional staff sufficient to ensure that they understand and appreciate the significance of prison rape and the necessity of its eradication;

(I) the timely and comprehensive investigation of staff sexual misconduct involving rape or other sexual assault on inmates;

(J) ensuring the confidentiality of prison rape complaints and protecting inmates who make complaints of prison rape;

(2) MAXIMUM.—The amount of a grant under this section may not exceed $1,000,000.

(3) MATCHING.—The Federal share of a grant under this section may not exceed 50 percent of the total costs of the project described in the application submitted under subsection (d) for the fiscal year for which the grant was made under this section.

(d) APPLICATIONS.—

(1) IN GENERAL.—To request a grant under this section, the chief executive of a State shall submit an application to the Attorney General at such time, in such manner, and accompanied by such information as the Attorney General may require.

(2) CONTENTS.—Each application required by paragraph (1) shall—

(A) include the certification of the chief executive that the State receiving such grant—

(i) has adopted all national prison rape standards that, as of the date on which the application was submitted, have been promulgated under this Act; and

(ii) will consider adopting all national prison rape standards that are promulgated under this Act after such date;

(B) specify with particularity the preventative, prosecutorial, or administrative activities to be undertaken by the State with the amounts received under the grant; and

(C) in the case of an application for a grant for one or more activities specified in paragraph (2) of subsection (b)—

(i) review the extent of the budgetary circumstances affecting the State generally and describe how those circumstances relate to the State's prisons;

(ii) describe the rate of growth in the State's prison population over the preceding 10 years and explain why the State may have difficulty sustaining that rate of growth; and

(iii) explain the extent to which officials (including law enforcement officials) of State and local governments and victims of crime will be consulted regarding decisions whether, or how, to moderate the growth of the State's prison population.

(e) REPORTS BY GRANTEE.—

(1) IN GENERAL.—The Attorney General shall require each grantee to submit, not later than 90 days after the end of the period for which the grant was made under this section, a report on the activities carried out under the grant. The report shall identify and describe those activities and shall contain an evaluation of the effect of those activities on—

(A) the number of incidents of prison rape, and the grantee's response to such incidents; and

(B) the safety of the prisons, and the safety of the communities in which released inmates are present.

(2) DISSEMINATION.—The Attorney General shall ensure that each report submitted under paragraph (1) is made available under the national clearinghouse established under section 5.

(f) STATE DEFINED.—In this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any other territory or possession of the United States.

(g) AUTHORIZATION OF APPROPRIATIONS.—

(1) IN GENERAL.—There are authorized to be appropriated for grants under this section $40,000,000 for each of fiscal years 2004 through 2010.

(2) LIMITATION.—Of amounts made available for grants under this section, not less than 50 percent shall be available only for activities specified in paragraph (1) of subsection (b).

<< 42 USCA § 15606 >>

SEC. 7. NATIONAL PRISON RAPE REDUCTION COMMISSION.

(a) ESTABLISHMENT.—There is established a commission to be known as the National Prison Rape Reduction Commission (in this section referred to as the "Commission").

(b) MEMBERS.

(1) IN GENERAL.—The Commission shall be composed of 9 members, of whom—

(A) 3 shall be appointed by the President;

(B) 2 shall be appointed by the Speaker of the House of Representatives, unless the Speaker is of the same party as the President, in which case 1 shall be appointed by the Speaker of the House of Representatives and 1 shall be appointed by the minority leader of the House of Representatives;

(C) 1 shall be appointed by the minority leader of the House of Representatives (in addition to any appointment made under subparagraph (B));

(D) 2 shall be appointed by the majority leader of the Senate, unless the majority leader is of the same party as the President, in which case 1 shall be appointed by the majority leader of the Senate and 1 shall be appointed by the minority leader of the Senate; and

(E) 1 member appointed by the minority leader of the Senate (in addition to any appointment made under subparagraph (D)).

(2) PERSONS ELIGIBLE.—Each member of the Commission shall be an individual who has knowledge or expertise in matters to be studied by the Commission.

(3) CONSULTATION REQUIRED.—The President, the Speaker and minority leader of the House of Representatives, and the majority leader and minority leader of the Senate shall consult with one another prior to the appointment of the members of the Commission to achieve, to the maximum extent possible, fair and equitable representation of various points of view with respect to the matters to be studied by the Commission.

(4) TERM.—Each member shall be appointed for the life of the Commission.

(5) TIME FOR INITIAL APPOINTMENTS.—The appointment of the members shall be made not later than 60 days after the date of enactment of this Act.

(6) VACANCIES.—A vacancy in the Commission shall be filled in the manner in which the original appointment was made, and shall be made not later than 60 days after the date on which the vacancy occurred.

(c) OPERATION.—

(1) CHAIRPERSON.—Not later than 15 days after appointments of all the members are made, the President shall appoint a chairperson for the Commission from among its members.

(2) MEETINGS.—The Commission shall meet at the call of the chairperson. The initial meeting of the Commission shall take place not later than 30 days after the initial appointment of the members is completed.

(3) QUORUM.—A majority of the members of the Commission shall constitute a quorum to conduct business, but the Commission may establish a lesser quorum for conducting hearings

(K) creating a system for reporting incidents of prison rape that will ensure the confidentiality of prison rape complaints, protect inmates who make prison rape complaints from retaliation, and assure the impartial resolution of prison rape complaints;

(L) data collection and reporting of—

(i) prison rape;

(ii) prison staff sexual misconduct; and

(iii) the resolution of prison rape complaints by prison officials and Federal, State, and local investigation and prosecution authorities; and

(M) such other matters as may reasonably be related to the detection, prevention, reduction, and punishment of prison rape.

(3) LIMITATION.—The Commission shall not propose a recommended standard that would impose substantial additional costs compared to the costs presently expended by Federal, State, and local prison authorities.

(f) CONSULTATION WITH ACCREDITATION ORGANIZATIONS.—In developing recommended national standards for enhancing the detection, prevention, reduction, and punishment of prison rape, the Commission shall consider any standards that have already been developed, or are being developed simultaneously to the deliberations of the Commission. The Commission shall consult with accreditation organizations responsible for the accreditation of Federal, State, local or private prisons, that have developed or are currently developing standards related to prison rape. The Commission will also consult with national associations representing the corrections profession that have developed or are currently developing standards related to prison rape.

(g) HEARINGS.—

(1) IN GENERAL.—The Commission shall hold public hearings. The Commission may hold such hearings, sit and act at such times and places, take such testimony, and receive such evidence as the Commission considers advisable to carry out its duties under this section.

(2) WITNESS EXPENSES.—Witnesses requested to appear before the Commission shall be paid the same fees as are paid to witnesses under section 1821 of title 28, United States Code. The per diem and mileage allowances for witnesses shall be paid from funds appropriated to the Commission.

(h) INFORMATION FROM FEDERAL OR STATE AGENCIES.—The Commission may secure directly from any Federal department or agency such information as the Commission considers necessary to carry out its duties under this section. The Commission may request the head of any State or local department or agency to furnish such information to the Commission.

(i) PERSONNEL MATTERS.—

(1) TRAVEL EXPENSES.—The members of the Commission shall be allowed travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of title 5, United States Code, while away from their homes or regular places of business in the performance of service for the Commission.

(2) DETAIL OF FEDERAL EMPLOYEES.—With the affirmative vote of ⅔ of the Commission, any Federal Government employee, with the approval of the head of the appropriate Federal agency, may be detailed to the Commission without reimbursement, and

such detail shall be without interruption or loss of civil service status, benefits, or privileges.

(3) PROCUREMENT OF TEMPORARY AND INTERMITTENT SERVICES.—Upon the request of the Commission, the Attorney General shall provide reasonable and appropriate office space, supplies, and administrative assistance.

(j) CONTRACTS FOR RESEARCH.—

(1) NATIONAL INSTITUTE OF JUSTICE.—With a ⅔ affirmative vote, the Commission may select nongovernmental researchers and experts to assist the Commission in carrying out its duties under this Act. The National Institute of Justice shall contract with the researchers and experts selected by the Commission to provide funding in exchange for their services.

(2) OTHER ORGANIZATIONS.—Nothing in this subsection shall be construed to limit the ability of the Commission to enter into contracts with other entities or organizations for research necessary to carry out the duties of the Commission under this section.

(k) SUBPOENAS.—

(1) ISSUANCE.—The Commission may issue subpoenas for the attendance of witnesses and the production of written or other matter.

(2) ENFORCEMENT.—In the case of contumacy or refusal to obey a subpoena, the Attorney General may in a Federal court of appropriate jurisdiction obtain an appropriate order to enforce the subpoena.

(3) CONFIDENTIALITY OF DOCUMENTARY EVIDENCE.—Documents provided to the Commission pursuant to a subpoena issued under this subsection shall not be released publicly without the affirmative vote of ⅔ of the Commission.

(l) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated such sums as may be necessary to carry out this section.

(m) TERMINATION.—The Commission shall terminate on the date that is 60 days after the date on which the Commission submits the reports required by this section.

(n) EXEMPTION.—The Commission shall be exempt from the Federal Advisory Committee Act.

<< 42 USCA § 15607 >>

SEC. 8. ADOPTION AND EFFECT OF NATIONAL STANDARDS.

(a) PUBLICATION OF PROPOSED STANDARDS.—

(1) FINAL RULE.—Not later than 1 year after receiving the report specified in section 7(d)(3), the Attorney General shall publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape.

(2) INDEPENDENT JUDGMENT.—The standards referred to in paragraph (1) shall be based upon the independent judgment of the Attorney General, after giving due consideration to the recommended national standards provided by the Commission under section 7(e), and being informed by such data, opinions, and proposals that the Attorney General determines to be appropriate to consider.

(3) LIMITATION.—The Attorney General shall not establish a national standard under this section that would impose substantial additional costs compared to the costs presently expended by Federal, State, and local prison authorities. The Attorney General may, however, provide a list of improvements for consideration by correctional facilities.

(4) TRANSMISSION TO STATES.—Within 90 days of publishing the final rule under paragraph (1), the Attorney General shall transmit the national standards adopted under such paragraph to the chief executive of each State, the head of the department of corrections of each State, and to the appropriate authorities in those units of local government who oversee operations in one or more prisons.

(b) APPLICABILITY TO FEDERAL BUREAU OF PRISONS.—The national standards referred to in subsection (a) shall apply to the Federal Bureau of Prisons immediately upon adoption of the final rule under subsection (a)(4).

(c) ELIGIBILITY FOR FEDERAL FUNDS.—

(1) COVERED PROGRAMS.—

(A) IN GENERAL.—For purposes of this subsection, a grant program is covered by this subsection if, and only if—

(i) the program is carried out by or under the authority of the Attorney General; and

(ii) the program may provide amounts to States for prison purposes.

(B) LIST.—For each fiscal year, the Attorney General shall prepare a list identifying each program that meets the criteria of subparagraph (A) and provide that list to each State.

(2) ADOPTION OF NATIONAL STANDARDS.—For each fiscal year, any amount that a State would otherwise receive for prison purposes for that fiscal year under a grant program covered by this subsection shall be reduced by 5 percent, unless the chief executive of the State submits to the Attorney General—

(A) a certification that the State has adopted, and is in full compliance with, the national standards described in section 8(a); or

(B) an assurance that not less than 5 percent of such amount shall be used only for the purpose of enabling the State to adopt, and achieve full compliance with, those national standards, so as to ensure that a certification under subparagraph (A) may be submitted in future years.

(3) REPORT ON NONCOMPLIANCE.—Not later than September 30 of each year, the Attorney General shall publish a report listing each grantee that is not in compliance with the national standards adopted pursuant to section 8(a).

(4) COOPERATION WITH SURVEY.—For each fiscal year, any amount that a State receives for that fiscal year under a grant program covered by this subsection shall not be used for prison purposes (and shall be returned to the grant program if no other authorized use is available), unless the chief executive of the State submits to the Attorney General a certification that neither the State, nor any political subdivision or unit of local government within the State, is listed in a report issued by the Attorney General pursuant to section 4(c)(2)(C).

(5) REDISTRIBUTION OF AMOUNTS.—Amounts under a grant program not granted by reason of a reduction under paragraph (2), or returned by reason of the prohibition in paragraph (4), shall be granted to one or more entities not subject to such reduction or such prohibition, subject to the other laws governing that program.

(6) IMPLEMENTATION.—The Attorney General shall establish procedures to implement this subsection, including procedures for effectively applying this subsection to discretionary grant programs.

(7) EFFECTIVE DATE.—

(A) REQUIREMENT OF ADOPTION OF STANDARDS.—The first grants to which paragraph (2) applies are grants for the second fiscal year beginning after the date on which the national standards under section 8(a) are finalized.

(B) REQUIREMENT FOR COOPERATION.—The first grants to which paragraph (4) applies are grants for the fiscal year beginning after the date of the enactment of this Act.

<< 42 USCA § 15608 >>

SEC. 9. REQUIREMENT THAT ACCREDITATION ORGANIZATIONS ADOPT ACCREDITATION STANDARDS.

(a) ELIGIBILITY FOR FEDERAL GRANTS.—Notwithstanding any other provision of law, an organization responsible for the accreditation of Federal, State, local, or private prisons, jails, or other penal facilities may not receive any new Federal grants during any period in which such organization fails to meet any of the requirements of subsection (b).

(b) REQUIREMENTS.—To be eligible to receive Federal grants, an accreditation organization referred to in subsection (a) must meet the following requirements:

(1) At all times after 90 days after the date of enactment of this Act, the organization shall have in effect, for each facility that it is responsible for accrediting, accreditation standards for the detection, prevention, reduction, and punishment of prison rape.

(2) At all times after 1 year after the date of the adoption of the final rule under section 8(a)(4), the organization shall, in addition to any other such standards that it may promulgate relevant to the detection, prevention, reduction, and punishment of prison rape, adopt accreditation standards consistent with the national standards adopted pursuant to such final rule.

<< 42 USCA § 15609 >>

SEC. 10. DEFINITIONS.

In this Act, the following definitions shall apply:

(1) CARNAL KNOWLEDGE.—The term "carnal knowledge" means contact between the penis and the vulva or the penis and the anus, including penetration of any sort, however slight.

(2) INMATE.—The term "inmate" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

(3) JAIL.—The term "jail" means a confinement facility of a Federal, State, or local law enforcement agency to hold—
 (A) persons pending adjudication of criminal charges; or
 (B) persons committed to confinement after adjudication of criminal charges for sentences of 1 year or less.
(4) HIV.—The term "HIV" means the human immunodeficiency virus.
(5) ORAL SODOMY.—The term "oral sodomy" means contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.
(6) POLICE LOCKUP.—The term "police lockup" means a temporary holding facility of a Federal, State, or local law enforcement agency to hold—
 (A) inmates pending bail or transport to jail;
 (B) inebriates until ready for release; or
 (C) juveniles pending parental custody or shelter placement.
(7) PRISON.—The term "prison" means any confinement facility of a Federal, State, or local government, whether administered by such government or by a private organization on behalf of such government, and includes—
 (A) any local jail or police lockup; and
 (B) any juvenile facility used for the custody or care of juvenile inmates.
(8) PRISON RAPE.—The term "prison rape" includes the rape of an inmate in the actual or constructive control of prison officials.
(9) RAPE.—The term "rape" means—
 (A) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person, forcibly or against that person's will;
 (B) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person not forcibly or against the person's will, where the victim is incapable of giving consent because of his or her youth or his or her temporary or permanent mental or physical incapacity; or
 (C) the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person achieved through the exploitation of the fear or threat of physical violence or bodily injury.
(10) SEXUAL ASSAULT WITH AN OBJECT.—The term "sexual assault with an object" means the use of any hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal opening of the body of another person.
(11) SEXUAL FONDLING.—The term "sexual fondling" means the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification.
(12) EXCLUSIONS.—The terms and conditions described in paragraphs (9) and (10) shall not apply to—
 (A) custodial or medical personnel gathering physical evidence, or engaged in other legitimate medical treatment, in the course of investigating prison rape;
 (B) the use of a health care provider's hands or fingers or the use of medical devices in the course of appropriate medical treatment unrelated to prison rape; or

 (C) the use of a health care provider's hands or fingers and the use of instruments to perform body cavity searches in order to maintain security and safety within the prison or detention facility, provided that the search is conducted in a manner consistent with constitutional requirements.

Approved September 4, 2003.

LEGISLATIVE HISTORY—S. 1435:

CONGRESSIONAL RECORD, Vol. 149 (2003):

July 21, considered and passed Senate.

July 25, considered and passed House.

WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 39 (2003):

Sept. 4, Presidential statement.

PL 108-79, 2003 S 1435

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.