IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEON HAMPTON (M15934), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-CV-936-DRH |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | The Hon. David R. Herndon |
| CORRECTIONS DIRECTOR JOHN | ) | Magistrate Judge Reona Daly |
| BALDWIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF**
**<u>A PRELIMINARY INJUNCTION</u>**

Plaintiff is a transgender woman currently housed in Menard Correctional Center, a high security men's prison. Plaintiff has identified as a female since the young age of five. In 2012, she was diagnosed with gender dysphoria by an IDOC psychiatrist and began receiving cross-sex hormone treatment while in IDOC custody in July 2016—as a result of the treatment, her testosterone level is virtually nil and she is chemically castrated. Despite being a transgender woman, Plaintiff has exclusively been placed in men's prisons since entering IDOC custody. Prior to being housed in Menard, Plaintiff was at Pinckneyville Correctional Center, where several correctional officers sexually assaulted her on multiple occasions. When she reported this abuse, the officers retaliated by beating her and filing false disciplinary charges against her that resulted in segregation time and her transfer to Menard.

The Defendants at Menard have targeted Plaintiff both in retaliation for her complaints, and because of her gender identity, by subjecting her to constant sexual harassment, including the use of derogatory names, and physical abuse. On at least four occasions, the Defendants have beaten her, each time inflicting serious injury. On at least one occasion, the Defendants

1

stood by and allowed another prisoner to beat Plaintiff in a holding cell in the infirmary. The Defendants have made it clear to Plaintiff that they will not protect her from attacks by other prisoners; instead, they will encourage and facilitate the attacks.

The Defendants have attempted to cover up their retaliatory and abusive actions by giving Plaintiff false disciplinary tickets, which have resulted in a sentence of segregation until approximately April 2018, and threatening her with more segregation time and future beatings if she complains about her treatment. Plaintiff's placement in segregation has prevented her from going to a Transgender Support Group, which is psychosocial support medically necessary to treat her gender dysphoria. Plaintiff has shown clear signs of psychiatric deterioration since being in segregation. She is in substantial distress from her undertreated gender dysphoria, compounded by the conditions in segregation and the constant sexual harassment and physical abuse she has to endure. Plaintiff fears for her life at Menard. She has already faced serious physical and emotional injury since arriving at Menard and will continue to face a grave risk of serious injury if she remains there.[1]

For this reason, and pursuant to Federal Rule of Civil Procedure 65, Plaintiff seeks a preliminary injunction ordering Defendants Director John Baldwin and Warden Jacqueline Lashbrook in their official capacities to: 1) transfer Plaintiff to Logan Correctional Center, a women's prison; and 2) remove the retaliatory discipline on Plaintiff's record and move her out of segregation.

Preliminary injunctions are granted in extraordinary situations where there is a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d

---

[1] The allegations in Plaintiff's First Amended Complaint are supported by a number of witnesses. *See* Ex. 1, Pinckneyville Witness Affidavits; Ex. 2, Menard Witness Affidavits.

809 (7th Cir. 1999). The need here could not be more obvious or more immediate. Plaintiff's situation satisfies each requirement for a preliminary injunction: (1) she will succeed on the merits because Defendants have so clearly violated (i) her rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating against her on the basis of her gender identity and housing her in a men's prison, and (ii) her rights under the First Amendment by retaliating against her for reporting the abuse she experienced; (2) in the absence of intervention by this Court, Plaintiff will suffer irreparable harm—namely substantial likelihood that she will continue to be subjected to serious threats to her physical safety and emotional well-being, and denied adequate care for her gender dysphoria; (3) there is no adequate remedy at law—only an injunction will ensure that Plaintiff is transferred to a women's prison and removed from segregation; and (4) ensuring that Defendants appropriately house Plaintiff, stop discriminating against her because of her gender identity, and stop retaliating against her for engaging in protected speech will further the public interest and will not harm Defendants in any way. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803-804 (7th Cir. 2002). Thus, this Court must act in order to ensure that Plaintiff's constitutional rights are not continually violated and that she is appropriately housed.[2]

    **I.**    **Plaintiff's claims that Defendants violated her constitutional rights by discriminating against her on the basis of her gender identity and retaliating against her for reporting the discrimination and abuse will likely succeed on the merits.**

---

[2] Prior to filing the amended complaint and this motion, undersigned counsel attempted to negotiate a resolution of Plaintiff's claims with counsel for Menard Correctional Center. Undersigned counsel first initiated contact with counsel for IDOC and Menard on October 11, 2017. Since that time, efforts to resolve Plaintiff's claims have been unsuccessful, thus necessitating the request for emergency relief.

In order to demonstrate a substantial likelihood of success on the merits, a plaintiff must demonstrate "a plausible claim on the merits." *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). Courts should not "improperly equat[e] 'likelihood of success' with 'success.'" *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011) (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 394 (1981)). "[T]he threshold for establishing likelihood of success is low." *Id*. A plaintiff need "only to present a claim plausible enough that (if the other preliminary injunction factors cut in their favor) the entry of a preliminary injunction would be an appropriate step." *Id.* at 783. To determine whether a plaintiff's legal arguments has a likelihood of succeeding, courts use whatever existing test would be employed to decide the merits of the case. *See S./Sw. Ass'n of Realtors v. Evergreen Park, IL*, 109 F.Supp.2d 926, 927 (N.D. Ill. 2000).

In this case, Plaintiff has a high chance of success on the merits of all her claims, but below will focus on the claims particularly relevant to the emergency relief she seeks—her Fourteenth Amendment and First Amendment claims.

### A. Plaintiff will prevail on her claims that Defendants violated her rights under the Equal Protection Clause.

The IDOC houses all non-transgender women in women's prisons, but forces the Plaintiff, a transgender woman, to be housed with men, merely because of the sex stereotypes associated with her assigned birth. This is precisely the type of "intentional and arbitrary discrimination" the Equal Protection Clause of the Fourteenth Amendment forbids. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017). Transgender people can allege that their right to equal protection has been violated when a government entity treats people who fail to conform "to the sex-based stereotypes associated

4

with their assigned sex at birth, differently." *Id.* at 1051. To state an equal protection claim under Section 1983, Plaintiff must show that the Defendants "acted with a nefarious discriminatory purpose and discriminated against her based on her membership in a definable class." *D.S. v. East Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015). Claims regarding discrimination on the basis of sex are subject to heightened scrutiny. *Whitaker*, 858 F.3d at 1050. This means that when a sex-based classification is used, the burden rests with the state to show that "the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objects." *Id.* (quoting *U.S. v. Virginia*, 518 U.S. 515, 524 (1996)). Neither the Supreme Court nor the Seventh Circuit have decided whether transgender status is per se entitled to heightened scrutiny. However, the Seventh Circuit in *Whitaker* applied heightened scrutiny to a transgender boy's equal protection claim against the School District, claiming that the plaintiff had experienced a form of sex-discrimination by being barred from using the boys' bathroom. *Id.* at 1051. In that case, the Seventh Circuit found that the plaintiff demonstrated a likelihood of success on his equal protection claim and upheld the district court's grant of a preliminary injunction enjoining the School District from denying the plaintiff access to the boys' restroom. *Id.* at 1052.

Several courts in other districts have also applied heightened scrutiny to equal protection claims involving transgender individuals. *See, e.g.*, *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Edu.*, 208 F. Supp. 3d 850, 873-74 (S.D. Ohio 2016) (applying the Supreme Court's four-factor test to determine whether a new classification requires heightened scrutiny and concluding that transgender individuals are a quasi-suspect class); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (finding that transgender people are a quasi-suspect class and applying intermediate scrutiny to defendants' treatment of plaintiff);

*Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) ("the Court concludes that discrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a "suspect" or "quasi-suspect classification" identified by the Supreme Court" (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000)); *Mitchell v. Price*, No. 11-cv-260-wmc, 2014 WL 6982280, at *8 (W.D. Wis. Dec. 10, 2014) ("[a]lthough the issue has yet to be settled in this circuit, the parties agree that Mitchell's Fourteenth Amendment equal protection claims based on her transgender status receive heightened scrutiny" (citing *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2012)).

Further, the Supreme Court has held that heightened scrutiny standard of review, rather than rational basis standard of review applied in certain prison cases, governs a prisoner's claims of discrimination under the Equal Protection Clause. *See Johnson v. California*, 543 U.S. 499, 510-11 (2005) (finding that strict scrutiny applied to prisoner's equal protection claim against corrections officials challenging the policy of racially segregating prisoners because the right not to be discriminated against "is not a right that need necessarily be compromised for the sake of proper prisoner administration").

Adopting the reasoning in the above cited cases, Plaintiff's equal protection claims should be analyzed under heightened scrutiny. Plaintiff has experienced sex discrimination analogous to the plaintiff in *Whitaker*—IDOC refuses to place Plaintiff in a women's prison despite her status as a transgender woman simply because she was assigned male at birth. Defendants are well aware of Plaintiff's status as a transgender woman and well aware that she is on cross-hormone treatment, which she began in IDOC custody. According to Dr. George Brown, a psychiatrist who is an expert in providing transgender health care, "there is no medical

6

justification for continuing to house her in a men's prison. To the contrary, continued housing in a men's prison will seriously compromise [Plaintiff's] mental health and prevent her from receiving adequate treatment for her gender dysphoria (GD)." Ex. 3, Dr. Brown Decl. ¶ 3. Further, to the extent the Defendants rely on the fact that Plaintiff has not yet had sex reassignment surgery to justify her continued placement in a men's prison, as Dr. Brown explains, "this position conflicts with all reliable medical literature," and that given her hormone levels, Plaintiff "is functionally chemically castrated." *Id.* ¶ 4. Additionally, Dan Pacholke, a corrections expert with more than thirty-five years of experience in the field of adult corrections, opines that there is nothing in Plaintiff's record "that would indicate that she would be a security threat at a women's correctional facility" and that "[p]lacing [her] at a women's prison is appropriate." Ex. 4, Pacholke Report at 6. Accordingly, the Defendants will likely not be able to establish that Plaintiff's placement in a men's prison is substantially related to an important government interest. *See Norsworthy*, 87 F. Supp. 3d at 1120 (finding that transgender woman prisoner adequately stated equal protection claim against prison officials for denying her sex reassignment surgery); *Mitchell*, 2014 WL 6982280, at *11-12 (denying summary judgement on transgender woman prisoner's equal protection claim against officer who transferred her back to a block where she encountered taunts and threats).

Defendants have also intentionally discriminated against Plaintiff by subjecting her to constant verbal sexual harassment, insults, threats, and intimidation that male prisoners do not endure due to her transgender status. It is well settled that sexual harassment is a form of gender discrimination proscribed by the Equal Protection Clause. *See, e.g.*, *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015) (finding that it was clearly established that "sexual harassment by a state actor under color of state law violated the Equal Protection Clause and was actionable under §

7

1983"); *Hickman v. Laskodi*, 45 Fed. App'x 451, 455 (6th Cir. 2002) ("This court made clear long before [the date of the incident] that sexual harassment by government official violates the Equal Protection Clause."); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743-49 (2d Cir. 2003) (denying summary judgement on student's claim that professor violated her rights under the Equal Protection Clause by sexually harassing her). To succeed on a sexual harassment claim, Plaintiff must establish that (1) the harassment was intentional and based on sex and (2) the harassment was "sufficiently severe or pervasive." *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990); *see also Adair v. Hunter*, 236 F. Supp. 3d 1034, 140 (E.D. Tenn. 2017) (While isolated incidents of verbal harassment do not rise to the level of constitutional violations, "where, as here, a plaintiff alleges ongoing harassment, the equal protection clause applies.").

      Plaintiff satisfies both prongs. Since arriving at Menard, the Defendants have constantly harassed her based on her gender identity. On a daily basis, they call her derogatory names such as "fag," "faggot," "duck sucker," "bitch," "whore," "he/she," "chick with a dick," and more. They threaten her, saying things like "we will make sure you get raped." The Defendants have also sexually assaulted Plaintiff by touching her breasts and her backside, putting a finger in her anus, and tickling her feet. The sexual harassment is so severe and pervasive that it rises to the level of a constitutional violation. *See Owens v. Ragland*, 313 F. Supp. 2d 939, 944-47 (W.D. Wis. 2004) (denying summary judgement on plaintiff's equal protection claim where city official made sexually explicit comments and proposals to plaintiff); *Joyner v. Snyder*, No. 06-3062, 2007 WL 401269, at *2 (C.D. Ill. Feb. 1, 2007) (finding that prisoner sufficiently stated an equal protection violation where prisoner alleged that he was harassed and discriminated against because of his sexual orientation).

## B. Plaintiff will prevail on her claim that Defendants violated her rights under the First Amendment.

To succeed on a First Amendment retaliation claim, Plaintiff must show that the Defendants took action to punish her for engaging in constitutionally protected conduct, such as speech. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)). In particular, Plaintiff must demonstrate that (1) her conduct was constitutionally protected and (2) her conduct "was a 'substantial factor' or 'motivating factor' in the defendant[s'] challenged actions." *Thomsen v. Romeis*, 198 F.3d 1022, 1027 (7th Cir. 2000); *see also Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Once Plaintiff makes this showing, the burden rests on the Defendants to demonstrate that they would have taken the actions despite such bad motive. *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013).

It is well settled that prisoners have a protected First Amendment right to file grievances and otherwise complain about their conditions of incarceration. *See Pearson v. Welborn*, 471 F.3d 732, 741-42 (7th Cir. 2006) (finding that a prisoners' written or oral complaints about conditions of confinement are protected speech); *Babcock*, 102 F.3d at 276 ("federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, as well as the right to be free from retaliation for exercising this right" (internal citations omitted)). Thus, Plaintiff engaged in constitutionally protected conduct when she reported the sexual and physical abuse she experienced both at Pinckneyville and Menard.

Since arriving at Menard, the Defendants have continually harassed Plaintiff, threatened her, and physically abused her. The Defendants have made it clear that the harassment and physical abuse is retaliation for the complaint she filed about the sexual abuse she experienced at Pinckneyville. The officers have made comments such as "we got a call from our buddies at Pinckneyville," "we know who are you," and "Pinckneyville told me to put you on my target list." The Defendants have also made clear that if Plaintiff reports the abuse she is experiencing at Menard, the retaliation will continue.

9

They have repeatedly threatened her, making comments such as "we will bury you in seg," "we will make sure you get raped," and "we will make sure you do not make your out date." Each time Plaintiff has spoken up about the abuse she is experiencing, the Defendants have retaliated against her by beating her or allowing another inmate to beat her. They have also retaliated against her by filing false disciplinary charges to increase her segregation time. *Geder v. Godinez*, 875 F. Supp. 1334, 1338 (N.D. Ill. 1995) (denying defendant IDOC's motion for summary judgment where evidence showed disciplinary charges were filed in retaliation for prisoner submitting written grievances) (citing *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)). Thus, through their own words and actions, the Defendants have made it crystal clear that Plaintiff's protected speech is the motivating factor for their retaliatory acts.

## II. Plaintiff will suffer irreparable harm in the absence of a preliminary injunction.

A preliminary injunction is necessary to avert three forms of irreparable harm to Plaintiff: 1) the ongoing violation of her constitutional rights, which in itself constitutes irreparable harm; 2) the continued, serious threats to her physical safety and emotional well-being; and 3) denial of adequate care for her gender dysphoria.

First, the Defendant's continual deprivation of Plaintiff's First and Fourteenth Amendment rights, as previously described, is an irreparable harm sufficient to warrant a preliminary injunction. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (same); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would

serve the public interest.") (affirming grant of preliminary injunction in prison conditions case); *Planned Parenthood of Ind. and Ky., Inc. v. Commissioner*, 194 F. Supp. 3d, 818, 835 (S.D. Ind. 2016) (finding that the "presumption of irreparable harm also applies to equal protection violations").

Second, Plaintiff's physical safety and emotional well-being are at risk. The Defendants have seriously beaten her on at least four occasions and allowed another inmate to attack her on at least one occasion. The Defendants also continually threaten Plaintiff with physical harm if she reports the abuse she is experiencing. *See Hoskins v. Dilday*, 2017 WL 951410, at *6 (S.D. Ill. Mar. 10, 2017) (finding that prisoner faced irreparable harm if he remained at Menard, where he "faces physical threats and is prevented from receiving needed medications and food trays at times"); *Mitchell v. Baker*, No. 13-cv-0860-MJR-SCW, 2015 WL 278852, at *5 (S.D. Ill. Jan. 21, 2015) (finding that irreparable harm was "undisputed" where plaintiff alleged that officers at Menard victimized him via frequent threats and physical abuse); *White v. Jindal*, No. 13-15073, 2014 WL 1608697, at *6 (E.D. Mich. 2014) (finding that prisoner would suffer irreparable harm absent a preliminary injunction ordering his transfer to another facility where prisoner claimed that he was beaten by other prisoners and "warned that he would be beaten further if he did not provide 'protection money'"); *Pocklington v. O'Leary*, No. 86 C 2676, 1986 WL 5748, at *1 (N.D. Ill. May 6, 1986) (granting TRO and ordering warden not to return prisoner to general population status where plaintiff had been raped by other inmates, notified prison officers, and was ignored by them).

Additionally, Defendants constantly sexually harass Plaintiff and torment her in other ways, such as refusing to feed her and giving her false disciplinary tickets to increase her segregation time. The abusive and restrictive conditions under which Plaintiff is housed are

causing harm to her mental health. According to Dr. Brown, Plaintiff's "extended placement in segregation" has caused her to suffer "from a number of mental health crises." Ex. 1, Brown Decl. ¶ 14. Dr. Brown opines that Plaintiff "has shown clear signs of psychiatric deterioration, including a significant increase in gender dysphoria, anxiety and depression." *Id.*; *see also Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1123 (W.D. Wis. 2001) (finding that plaintiffs would suffer irreparable harm absent a preliminary injunction where the conditions at Supermax posed a grave risk of harm to seriously mentally ill inmates).

Third, Plaintiff faces irreparable harm due to the Defendants' failure to adequately treat her gender dysphoria. Dr. Brown explains that like many other medical conditions, medication alone is insufficient to treat gender dysphoria; rather, multiple interventions are necessary, including psychosocial supports, like a Transgender Support Group, which Plaintiff is being denied. Ex. 1, Brown Decl. ¶ 11-12. Dr. Brown opines that Plaintiff "is in substantial distress from her undertreated gender dysphoria, which is compounded by the reported conditions in the segregation unit and the abuse and trauma she has survived while in IDOC custody." *Id.* at 12; *see also Whitaker*, 858 F.3d at 1045 (finding that transgender student would suffer irreparable harm absent preliminary injunction where expert opined that Ash's treatment at school, including his inability to use the boys' restroom, "significantly and negatively impacted his mental health and overall well-being"); *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009) (granting a preliminary injunction in a prison medical care case where the irreparable harm constituted continued medication errors and delays, which will result in life-threatening risks, the exacerbation of chronic and acute serious medical conditions, and unnecessary pain and suffering); *Farnam v. Walker*, 593 F. Supp. 2d 1000, 1012-13 (C.D. Ill. 2009) (finding

irreparable harm where a doctor testified that "the care the plaintiff was receiving at Graham, if continued, would significantly decrease the quality as well as the quantity of the plaintiff's life").

### III. Plaintiff lacks an adequate remedy at law for ongoing violations of constitutional rights and risks to safety.

Money will not make Plaintiff whole, protect her from physical and emotional abuse, or adequately treat her medical needs. Only an order from this Court will accomplish this. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (holding that loss of First Amendment freedoms presumptively constitutes irreparable injury "for which money damages are not adequate" (citing *Elrod*, 427 U.S. at 373)); *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982) (stating that in prison conditions cases, "the quantification of injury is difficult and damages are therefore not an adequate remedy"); *Foster v. Ghosh*, 4 F. Supp. 3d 974, 983 (N.D. Ill. 2013) (granting preliminary injunction to prisoner requiring medical attention; no adequate remedy at law exists because "the consequence of inaction at this stage would be further deteriorated vision in both eyes"); *Pocklington*, 1986 WL 5748, at *1 (where prisoner faces a risk of rape,"[d]amages are plainly not an adequate remedy for the kind of further indignity with which [he] is threatened").

### IV. Plaintiff will suffer greater harm if a preliminary injunction is denied than Defendants will suffer if a preliminary injunction is granted and an injunction is in the public interest.

The balance of harms tips decidedly in Plaintiff's favor. The injunction sought here merely requires that the Defendants transfer Plaintiff to Logan Correctional Center and remove the retaliatory discipline on Plaintiff's record so that she can be removed from segregation. Such an injunction would will ensure Plaintiff's health and safety and end her physical and emotional suffering caused by the Defendants. Adhering to this injunction would cause the Defendants

minimal harm as "transfers of inmates occur on a daily basis; movement of inmates is normal." *Jones 'EL*, 164 F. Supp. 2d at 1123 (finding that transferring five prisoners "would not burden the department logistically or financially" and therefore the balance of harms tips in plaintiff's favor); *see also Hoskins*, 2017 WL 951410, at *6 (order transfer of inmate out of Menard to another facility because "the burden placed on Defendants by mandating Plaintiff's transfer is not greater than the risk of irreparable harm to Plaintiff").

Further, to the extent the Defendants attempt to argue that transferring Plaintiff to a women's prison would pose a harm to the other women prisoners, this position is unfounded. Dr. Brown explains that refusing to house Plaintiff in a women's prison simply because she has not yet had sex reassignment surgery "conflicts with all reliable medical literature," and that given her hormone levels, Plaintiff "is functionally chemically castrated." Ex. 2, Dr. Brown Decl. ¶ 4. In addition, Mr. Pacholke, explains that there is nothing in Plaintiff's record "that would indicate that she would be a security threat at a women's correctional facility." Ex. 4, Pacholke Report at 6; *see also Hoskins*, 2017 WL 951410, at *6 (rejecting defendants' argument that plaintiff might, in some unspecified way, endanger the public, staff, or other inmates if he is transferred because "the risk of harm to Plaintiff outweighs that speculative concern").

Additionally, removing Plaintiff's retaliatory discipline pending a resolution on the merits of this case would not cause any significant harm. If the preliminary injunction is granted but Defendants ultimately prevail in the case, they can simply resume punishing Plaintiff at the conclusion of the litigation. On the other hand, without provisional relief, Plaintiff will continue to suffer punitive confinement, and there will be no way to "unpunish" her at the conclusion of the litigation if she prevails.

14

Moreover, it is in the public interest to ensure that Plaintiff's constitutional rights are not violated by correctional officers. *See Christian Legal Soc'y*, 453 F.3d at 859 ("injunctions protecting First Amendment freedoms are always in the public interest"); *Hoskins*, 2017 WL 951410, at *7 ("In this case the public interest is best served by ensuring that corrections officers obey the law."); *Jones 'EL*, 164 F. Supp. 2d at 1125 ("Respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest." (citation omitted)).

## V. The Court should waive bond.

Under Federal Rule of Civil Procedure 65(c), district courts have discretion to determine the amount of the bond accompanying a preliminary injunction, and this includes the authority to set a nominal bond. In this case, the Court should waive bond because Plaintiff is indigent, the requested preliminary injunction is in the public interest, and the injunction is necessary to vindicate constitutional rights. *See Pocklington v. O'Leary*, No. 86 C 2676, 1986 WL 5748, at *2 (N.D. Ill. May 6, 1986) ("[B]ecause of [a prisoner's] indigent status, no bond under Rule 65(c) is required."); *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002) ("minimal bond amount should be considered" in public interest case); *Complete Angler, L.L.C. v. City of Clearwater*, 607 F.Supp.2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.").[3]

---

[3] In addition to the general preliminary injunction requirements discussed above, the Prison Litigation Reform Act requires a court to make certain additional findings when granting a preliminary injunction "[i]n any civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(2). Specifically, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Id.* In this case, the requested provisional remedy—transferring Plaintiff to Logan and lifting the punitive conditions—tracks the very

15

## CONCLUSION

For the foregoing reasons, the Court should order an evidentiary hearing on the motion for a preliminary injunction at the earliest possible date and/or enter a preliminary injunction enjoining Defendants to: 1) transfer Plaintiff to Logan Correctional Center, a women's prison; and 2) remove the retaliatory discipline on Plaintiff's record and move her out of segregation.

Respectfully submitted,

**DEON "STRAWBERRY" HAMPTON**

By: /s/ Vanessa del Valle
    One of her attorneys

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu

Alan Mills
Uptown People's Law Center
4413 N. Sheridan
Chicago, IL 60640
(773) 769-1411
alan@uplcchicago.org

---

constitutional violations that Plaintiff suffered, and therefore is narrowly tailored to remedy them.

16

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she served the foregoing document upon all persons who have filed appearances in this case via the Court's CM/ECF system on December 7, 2017.

/s/ Vanessa del Valle